# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

In Re:

DUNCAN H. MOORE,                                    BK 07-70948-CMS-7

    Debtor.

FIRST NATIONAL BANK OF
CENTRAL ALABAMA

    Plaintiff,                                    AP 07-70044 CMS

vs.

DUNCAN H. MOORE,

    Defendant.

## MEMORANDUM OF DECISION

This adversary proceeding came before the court on August 26, 2008, for hearing on the Motion for Partial Summary Judgment filed by First National Bank of Central Alabama ("Movant"). David B. Anderson and Deanna L. Weidner appeared on behalf of the Movant; Eric M. Wilson appeared on behalf of Duncan H. Moore ("Debtor"). After consideration of the arguments made at the hearing and the briefs submitted by all parties, this court will **DENY** the Movant's Motion for Partial Summary Judgment for the reasons that follow.

## JURISDICTION

The Bankruptcy Court has jurisdiction of Debtor's Chapter 13 case pursuant to 28 U.S.C. §

1

1334(a). This court has jurisdiction of this issue, a core bankruptcy proceeding, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

## FINDINGS OF FACT

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 6, 2007. (Bk. Doc. 1). The Debtor filed his schedules on June 28, 2007. (Bk Doc. 15). Debtor's bankruptcy schedules reveal that, at the time of filing, Debtor was working construction at Harrison Construction Company, Inc. Debtor's bankruptcy schedules also reveal that he owns a 50% interest in Hood Bottom, LLC, which maintains and operates a farming/hunting property and that he owned an interest in Drain Forest Products, Inc. ("Drain Forest Products"), a corporation in the business of manufacturing wood pallets, from 2004-2006. The Plaintiff's complaint alleged that Debtor owned a 34% interest in Drain Forest Products. (AP Doc.1).

Drain Forest Products maintained a checking account with Movant from 2003-2006. (AP Doc. 1). During this time, Drain Forest Products routinely overdrafted its account. (AP Doc. 1). In late 2004, Movant informed Drain Forest Products that the overdrafts could not continue, and Drain Forest Products requested that Movant extend the payment of the overdraft as the corporation was expanding and could not pay the overdraft in full at that time. (AP Doc. 1 ). Movant agreed to loan Drain Forest Products $150,000.00 so that Drain Forest Products would be able to pay the overdraft. Debtor signed a note dated February 9, 2004 ("Note") in the amount of $150,000.00 which matured on May 10, 2005. (AP Doc. 1). The Note was renewed twice and the final maturity date was September 26, 2005. The Note was not paid on its final maturity date, and in March 2006

2

Movant demanded payment. (AP Doc. 1). When payment was not made, Movant instituted a state court cause of action and obtained a default judgment against Debtor on March 8, 2007, in the Circuit Court of Pickens County in the amount of $153,088.99 ("Judgment"). (AP Doc. 23). The Judgment was recorded on April 17, 2007.

Movant commenced this adversary proceeding on September 10, 2007, seeking a denial of Debtor's discharge pursuant to §§ 727(a)(3) and 727(a)(5) of the Bankruptcy Code,[1] as well as a determination of nondischargeability as to Movant's Judgment pursuant to §§ 523(a)(2)(A) and 523(a)(2)(B). (AP Doc. 1). Movant served interrogatories and document requests upon Debtor in this adversary proceeding, to which Debtor responded. Subsequently, Movant filed this Motion for Partial Summary Judgment in this adversary proceeding on June 30, 2008 (AP Doc. 22), alleging that, as a matter of law, Debtor's discovery responses proved that Debtor failed to keep or preserve adequate records and that Debtor failed to explain a loss of assets prior to the filing of Debtor's bankruptcy petition. In its Motion for Partial Summary Judgment, Movant seeks a denial of Debtor's discharge pursuant to §§ 727(a)(3) and 727(a)(5). Attachments to the Motion for Partial Summary Judgment include a copy of Plaintiff's Interrogatories to Duncan Moore (Exhibit C); Debtor's Answer to Interrogatories (Exhibit D); Plaintiff's Request for Production of Documents (Exhibit E); and Debtor's Answer to Plaintiff's Request for Production of Documents (Exhibit F). Debtor filed supplemental discovery responses on October 15, 2008.[2] (AP Doc. 33). Movant filed a Summary

---

[1]All section references are to the Bankruptcy Code unless otherwise stated.

[2]Although filed after the hearing on the Motion for Partial Summary Judgment, these supplemental discovery responses are relevant to Movant's request for partial summary judgment as to § 727(a)(5) because § 727(a)(5) provides that a debtor has until the "determination of denial of discharge" to satisfactorily explain any loss of assets. 11 U.S.C. § 727(a)(5). Because the Movant does not object to the court considering these supplemental discovery responses in ruling

3

of Evidence Regarding Claim Under 11 U.S.C. § 727 on January 14, 2009. (AP Doc. 34). Movant

filed a Supplemental Submission in Support of Summary Judgment on January 21, 2009. (AP Doc.

35)

## CONCLUSIONS OF LAW

Before this court is the Movant's Motion for Partial Summary Judgment which seeks

summary judgment as to the causes of action pursuant to §§ 727(a)(3) and 727(a)(5). Movant alleges

that, as a matter of law, Debtor's general discharge should be denied pursuant to §§ 727(a)(3) and

727(a)(5).

Section 727 provides, in pertinent part, that:

(a) The court shall grant the debtor a discharge, unless-

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep
> or preserve any recorded information, including books, documents, records,
> and papers, from which the debtor's financial condition or business
> transactions might be ascertained, unless such act or failure to act was
> justified under all of the circumstances of the case;

> (5) the debtor has failed to explain satisfactorily, before determination of
> denial of discharge under this paragraph, any loss of assets or deficiency of
> assets to meet the debtor's liabilities;

11 U.S.C. § 727. "[Section] 727 of the Bankruptcy Code allows debtors to receive a general

discharge of their obligations in keeping with the primary purpose of bankruptcy law, to give honest

debtors a fresh start 'unhampered by the pressure and discouragement of preexisting debt.'" Farouki

v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1999) (quoting Lines v. Frederick, 400 U.S.

18, 19, 91 S. Ct. 113, 114, 27 L. Ed. 2d, 124 (1970)). A leading treatise on bankruptcy law has

---

on the request of partial summary judgment as to the § 727(a)(3) cause of action, the court will
do so.

4

stated:

> The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. Courts have noted that "a total bar to discharge is an extreme penalty." The reasons for denial of a discharge must be real and substantial rather than technical and conjectural. However, "[w]hile the law favors discharges in bankruptcy, it will not ordinarily tolerate the [debtor's] intentional departure from honest business practices where there is a reasonable likelihood of prejudice."

6 COLLIER ON BANKRUPTCY ¶ 727.01[4] (15th ed. rev. 2008). See also Micro Connections, Inc. v. Shah (In re Shah), 388 B.R. 23, 32 (Bankr. E.D.N.Y. 2008) (stating that because a discharge is vital to the fresh start contemplated by bankruptcy, § 727, which provides grounds for the denial of a debtor's discharge, "must be strictly construed against the party objecting to the debtor's discharge and liberally in favor of the debtor" ).

In a trial on a complaint objecting to a discharge, the plaintiff bears the burden of proving that a discharge is unwarranted. FED. R. BANKR. P. 4005. To carry its burden, the plaintiff must prove such discharge is unwarranted by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). If the plaintiff establishes a prima facie case, the burden shifts to the debtor to make a credible explanation of his actions. Buckeye Retirement Co., L.L.C. v. Howells (In re Howells), 365 B.R. 764, (Bankr. N.D. Ohio 2007).

A plaintiff bears a heavy burden in a trial to deny the Debtor his discharge pursuant to § 727; the burden is even greater in this case because Movant seeks to deny the Debtor's discharge through a Motion for Partial Summary Judgment. Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, governs the procedures for summary judgment and provides in pertinent part: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

Case 07-70044-CMS    Doc 36    Filed 01/30/09    Entered 01/30/09 11:13:11    Desc Main
Document    Page 5 of 24

genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c).[3] "The burden of showing the absence of any genuine dispute as to material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

To prove that a debtor is not entitled to receive a general discharge pursuant to § 727(a)(3) the Movant must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law as to all elements of § 727(a)(3). Therefore, Movant must show that: (1) Debtor either failed to keep or preserve any recorded information, or committed an act of destruction, mutilation, falsification, or concealment of any recorded information; and (2) that as a result of such failure or act, it is impossible to ascertain the financial condition and material business transactions of the Debtor. 11 U.S.C. § 727(a)(3); Howells, 365 B.R. at 764; Lewis v. Summers (In re Summers), 320 B.R. 630, 638 (Bankr. E.D. Mich. 2005).

The debtor's obligation to present records of financial information is intended to protect the trustee and creditors by enabling them to determine or confirm the debtor's financial

---

[3]This adversary proceeding was commenced on September 10, 2007. The amendments to the Federal Rules of Civil Procedure, made applicable through the various Rules of Bankruptcy Procedure, became effective on December 1, 2007. The Order of the Supreme Court adopting and amending the Rules indicates that the December 1, 2007 amendments "shall govern all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." As the 2007 Amendments to Rule 56 were intended to be stylistic only, the current text of the Rule applies even though the amendments to Rule 56 were not effective when this adversary proceeding was filed. *See* The Order of the United States Supreme Court Adopting and Amending the Federal Rules of Civil Procedure (Apr. 30, 2007).

6

condition and the cause of the debtor's financial difficulty. The records need not be in any particular form; however, they must be sufficient to "enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past."

6 COLLIER ON BANKRUPTCY ¶ 727.03[3][a] (15th ed. rev. 2008). <u>See also</u> <u>Colonial Bank, et al. v. Wynn (In re Wynn)</u>, 261 B.R. 286, 299 (Bankr. M.D. Ala. 2001); <u>Peterson v. Scott (In re Scott)</u>, 172 F.3d 959, 969 (7th Cir. 1999); <u>Meridian Bank v. Alten</u>, 958 F.2d 1226, 1230 (3rd Cir. 1992) . All books and records that are necessary to understand a debtor's financial condition are within the scope of § 727(a)(3). <u>First Union Nat'l Bank v. Golob (In re Golob)</u>, 252 B.R. 69, 76 (Bankr. E.D. Va. 2000).

Attached to Movant's Motion for Partial Summary Judgment is Exhibit E, a copy of the Movant's Request for Production of Documents ("Request for Production"). Debtor's Answer to the Request for Production is attached to the Motion for Partial Summary Judgment as Exhibit F. A review of the Request for Production and Debtor's Answer to such Request reveals the following:

(1) Question 1 requests every document of any date whatsoever relating to the records of Hood Bottom, LLC. The Debtor, in his Answer, stated "Defendant objects that this request is overly broad and unduly burdensome. However, without waiving this objection, documents for this request are enclosed herewith to the extent that Debtor had immediate possession and to the extent said request was reasonable in time frame. Otherwise, all documents are kept at Pritchett Moore, Inc. and maintained by Emily James and Thomas W. Moore, Jr. at that location."

(2) Question 2 asked for every document of any date whatsoever relating to the records of Bear Creek Wood Products. The Debtor, in his Answer, stated "Defendant does not have possession of

Case 07-70044-CMS    Doc 36    Filed 01/30/09    Entered 01/30/09 11:13:11    Desc Main
Document      Page 7 of 24

the items of this request. Defendant has supplied By-Laws of Bear Creek Wood Products, Inc. Said request should be made to James B. "Jimbo" Campbell (205-454-9327) who should have possession of the requested items."

(3) Question 3 requested any and all documents relating to the purchase, sale, transfer or encumbrance of any interest in real estate by the Debtor from 2002 until present. The Debtor's Answer states that the documents were produced.

(4) Question 4 requests documents evidencing or relating to the transfer of any interest in property other than real estate from January 2002 until the present. Debtor responded in his Answer as follows: "Defendant objects that this request is overly broad and unduly burdensome. Without waiving that objection, Debtor has traded two trucks and one car since 2002. Defendant traded a 2001 Chevrolet Z-71 and 2002 Toyota Camry to Magnolia Nissan for a 2004 Nissan Titan Truck. Defendant then traded this 2004 Nissan Truck toward the purchase of a 2007 Chevrolet Z-71. Defendant's father co-signed for the purchase of this 2007 Chevrolet Z-71."

(5) Question 5 requests documents relating to the ownership or use of any checking, savings, money market, ready asset, or other account, or any safe deposit box at any bank, savings and loan, stock brokerage firm, or other financial institution from January of 2002 until the present. Debtor objected to this request as being overly broad and unduly burdensome. The Debtor filed supplemental discovery responses stating that the following were produced: Merrill Lynch Brokerage Account statements for 2005 and 2006; Bank of Tuscaloosa bank statements from May 2006 through June, 2007; Sterne Agee Brokerage account records; 2006 Merrill Lynch Tax Reporting Statement.

(6) Question 6 asks for any documents relating to contracts, leases, lease purchase agreements, rental agreements, or other documents evidencing the leasing of real estate in which the Debtor had an

8

interest from 2002 until the present.  The Debtor responded that there were "none."

(7) Question 7 asks for any documents relating to purchase, ownership, pledge, sale or transfer of any stocks, bonds, securities, instruments, or other tangible or intangible assets from January of 2002 until the present, including the stock listed on the financial statement attached as an exhibit to the Motion to Produce.  The Debtor answered question 7 "none."  The Debtor's Answer to No. 7 of Plaintiff's Interrogatories reflects that stock in Security Bank was sold for $30,000 and deposited in a Merrill Lynch account.  The Merrill Lynch account is identified in the Debtor's Answer to No. 2 of Plaintiff's Interrogatories.  Schedule B of Debtor's Schedules reflects a cash money account and Roth IRA at Merrill Lynch.  Merrill Lynch records are noted as produced on the supplemental discovery response.

(8 and 9) Questions 8 and 9 appear to ask for any documents related to communications between the Debtor and Thomas W. Moore or Thomas W. Moore, Jr. on any subject whatsoever since January 2002.  Plaintiff's complaint alleges that Thomas W. Moore is the Debtor's father, and we assume that Thomas W. Moore, Jr. is the Debtor's brother.  Debtor's Answer to combined requests 8 and 9 was "none."

(10) Question 10 asks for copies of all homeowner's policies from January 2002 until the present.  The Debtor responded that the copies were enclosed.

(11) Question 11 asks for any documents relating to any trust or estate in which the Debtor has any interest.  The Debtor's response was that it was enclosed.  The Debtor set out four additional items related to trusts in his supplemental discovery responses.

(12) Question 12 asks for documents relating to sale of his residence and the purchase of his new residence.  The Debtor responded "See documents relating to Request #3" which stated that

9

documents were produced.

(13) Question 13 requests documents relating to the purchase of items of personal property listed in his bankruptcy schedules, including the 2007 GMC truck. The Debtor's responded that the documents were enclosed. The Debtor, in his supplemental responses to discovery, stated that additional documents related to the 2007 GMC truck were provided.

(14) Question 14 asked for evidence relating to the purchase price or market value of three dogs listed in Debtor's schedules. The Debtor's responded that there were none. Schedule B of the bankruptcy petition reflects a value of $0.00 for the dogs.

(15) Question 15 asked for state and federal income tax returns from the year 2002 to the present. The Debtor responded that the documents were enclosed.

(16) Question 16 requests documents relating to the use of credit cards from 2002 until the present. The Debtor responded that he did not have these records.

(17) Question 17 requests documents evidencing or relating to any banking or lending relationship between the Debtor and The Bank of Tuscaloosa. The Debtor responded that the documents were enclosed. In the Debtor's supplemental discovery responses he indicated that the Bank of Tuscaloosa bank statements from May 2006 through June 2007 were produced.

(18) Question 18 requests all documents evidencing or relating to any business or loan transactions or gifts between the Debtor and the following:

      a. Thomas W. Moore

      b. Thomas W. Moore, Jr.

      c. Pritchett-Moore Agency

      d. Hood Bottom, LLC

10

e. Bear Creek

f. Drain Forest Products

g. David Lee Drain

h. Harrison Construction Company, Inc.

The Debtor objected to this request as being overly broad and unduly burdensome.

(19) Question 19 requests any documents relating to the source and use of funds by the Debtor from January 2002 until the present. The Debtor objected that to this request as being "overly broad, vague and unduly burdensome."

(20) Question 20 asks for hard drives, computers, and media storage devices relating to his property. Debtor responded that there were none.

(21) Question 21 requests documents relating to the purchase of stock or ownership interest in Drain Forest Products. Debtor responded that there were none.

(22) Question 22 asks for all documents evidencing his purchase of stock or ownership interest in Bear Creek Wood Products. The Debtor responded that there were none.

(23) Question 23 asks for any documents evidencing or supporting the value of personal or real property made the subject of a Motion to Compromise which was filed in the main bankruptcy case. (BK Doc. 23). The Debtor responded that these documents were enclosed with the answers to previous questions.

(24) Question 24 requests documents identifying the personal property made the subject of the Motion to Compromise. The Debtor responded that there were none.

(25) Question 25 requests all documents that the Debtor intends to offer as exhibits as trial. The Debtor responded "Schedules, all documents produced herein, all documents produced by plaintiff

and all future documents produced by either Defendant or Plaintiff."

Having detailed the Movant's Request for Production and the Debtor's Answer to such Request, the court will now go through each response and determine, as a matter of law, whether such responses prove that Debtor failed to keep or preserve records. It should be noted that when the Debtor replied in his Answer that there were no documents to produce, this means that one of two things happened: either no such transaction took place or such transaction took place and the Debtor failed to keep any recorded documentation as to that transaction.

In Debtor's Answer to No. 6 of Movant's Request for Production, Debtor admitted that there were no documents evidencing the leasing of real estate in which the Debtor had any interest from 2002 until the present. The Debtor's Schedule A and Statement of Financial Affairs indicate that Debtor's personal residence is the only real estate that Debtor had an interest in from 2005-2007. Although Debtor indicated on the Personal Financial Statement submitted to Movant in 2005 ("Personal Financial Statement"), which is attached to the Motion for Partial Summary Judgment, that he owned $1,000,000.00 in real estate, Debtor's Answer to No. 7 of Movant's Interrogatories indicates that he had no interest in the $1,000,000.00 real estate and that the real estate in question has always been owned by the Debtor's parents. In any event, there is no evidence that the Debtor leased or rented any part of his personal residence or the $1,000,000.00 in real estate. Therefore, the court cannot say as a matter of law that the Debtor failed to keep or preserve any such records.

In Debtor's Answer to No. 7 of Movant's Request for Production, the Debtor admitted that there were no documents evidencing or related to the purchase, ownership, pledge, sale or transfer of any stocks, securities, instruments, or other tangible or intangible assets in which the Debtor

12

possessed any interest from January 2002 to the present. A review of the Personal Financial Statement of the Debtor and the record reflects that the Debtor owned $50,000.00 in U.S. Government Securities in 2005 and that he no longer owned such securities when he filed bankruptcy in 2007. However, Debtor's Answer to No. 7 of Movant's Interrogatories indicates that Debtor actually owned stock in Security Bank, not U.S. Government securities. There is no evidence as to when this stock was acquired and therefore the court cannot state that the Debtor failed to keep or preserve any records relating to the purchase of stock after January of 2002. Debtor's Answer to No. 7 of Movant's Interrogatories indicates that Debtor did sell the stock in Security Bank after 2002. Debtor explained that the stock was sold at a loss for $30,000.00 and that the money was deposited into a Merrill Lynch account. The supplemental discovery responses filed by the Debtor indicate that the Debtor produced the Merrill Lynch account records. Therefore, the court cannot say as a matter of law that the Debtor failed to keep or preserve any such records.

In Debtor's Answer to Nos. 8 & 9 of Movant's Request for Production, the Debtor admitted that there were no documents evidencing or related to communications and correspondence or transactions by and between the Debtor and Thomas W. Moore or Thomas W. Moore, Jr. The record indicates that Thomas W. Moore is the Debtor's father and that Thomas W. Moore, Jr. is the Debtor's brother. There is no evidence that there is or ever was any communication between these parties of the type that would be relevant in a bankruptcy proceeding. Therefore, the court cannot say as a matter of law that the Debtor failed to keep or preserve any such records.

In Debtor's Answer to No.14 of Movant's Request for Production, the Debtor admitted that there were no documents evidencing or related to the purchase price or market value of three dogs listed on the Debtor's schedules. The Debtor's Schedule B indicates that Debtor owns three dogs

13

with a fair market value of $0.00. There is no evidence that the Debtor actually purchased the dogs. It is entirely possible that the dogs were a gift or that Debtor acquired the dogs from the pound or the humane society. Therefore, the court cannot say as a matter of law that the Debtor failed to keep or preserve any records relating to the purchase price of the dogs. In addition, there is no evidence that Debtor's dogs are of the type that would have an established market value. Debtor's dogs could be mutts with no market value or they could be purebreds with a high market value. Therefore, this court cannot say that, as a matter of law, the Debtor failed to keep or preserve records relating to the dogs' market value.

In Debtor's Answer to No.16 of Movant's Request for Production, the Debtor admitted that he did not have records relating to his use of any credit card from January of 2002 to the present. Debtor's Schedule F reflects that Debtor has one credit card account with Bank of America. Schedule F further provides the account number and the amount of the indebtedness on the card, $12,312.00. Therefore, the court concludes that the Debtor failed to keep or preserve documents relating to the use of this credit card.

In Debtor's Answer to No. 20 of Movant's Request for Production, the Debtor admitted that there were no hard drives, computers, or media storage devices used by the Debtor, or on which any information or emails related to Debtor or Debtor's property or transactions are stored. This admission does not establish that the Debtor failed to keep or preserve information or emails related to Debtor or Debtor's property or transactions; it only establishes that such information was not kept on hard drives, computers or media storage devices. Therefore, the court cannot conclude, as a matter of law, that the Debtor failed to keep or preserve the information or emails.

In Debtor's Answer to No. 21 of Movant's Request for Production, the Debtor admitted that

14

there were no documents evidencing or relating to the purchase of stock or ownership interest in Drain Forest Products. The Debtor's petition establishes that the Debtor owned an interest in Drain Forest Products from 2004-2006. Plaintiff's Complaint alleges that the Debtor owned a 34% interest and that such interest was purchased for an investment of approximately $250,000.00. Therefore, the court can only conclude that the Debtor failed to keep or preserve records relating to the purchase of the ownership interest in Drain Forest Products.

In Debtor's Answer to No. 22 of Movant's Request for Production, the Debtor admitted that there were no documents evidencing or relating to the purchase of stock or ownership interest in Bear Creek Wood Products. However, there is no evidence in the record that Debtor purchased any stock or ownership interest in Bear Creek Wood Products. The Debtor did not list the ownership interest in his schedules, and Movant did not produce any evidence of Debtor's ownership in Bear Creek Wood Products. Because the court cannot determine whether the Debtor purchased stock or an ownership interest in Bear Creek Wood Products, the court cannot find that the Debtor failed to keep or preserve records relating to such purchase.

In Debtor's Answer to No. 24 of Movant's Request for Production, the Debtor admitted that there were no documents identifying the personal property made the subject of the Motion to Compromise filed by the Trustee in the underlying bankruptcy case. In such Motion to Compromise, the Debtor offered to purchase nonexempt personal property for $3,000.00 from the Trustee. Although, the Motion to Compromise does not have an itemized list of the various items of personal property to be purchased, the Debtor's Schedule B lists all of the Debtor's personal property and Schedule C lists all property that Debtor claimed as exempt. There is no evidence that Debtor owns nonexempt personal property that is not accounted for on Schedule B. Therefore, the court cannot

15

conclude that the Debtor failed to keep or preserve documentation identifying the personal property made the subject of the Motion to Compromise in the underlying bankruptcy case.

Based on the Debtor's discovery responses and the record, the court finds that the Debtor admitted that he failed to keep or preserve any records relating to two admitted transactions: (1) the use of Debtor's credit card; and (2) the purchase of an ownership interest in Drain Forest Products. Therefore, the Movant has established that there is no genuine issue of material fact as to whether the Debtor failed to keep or preserve recorded information. The Movant must now establish that there is no genuine issue of material fact as to whether the failure to keep or preserve the recorded information resulted in the inability of the Movant to ascertain Debtor's financial condition. Campana v. Pilavis (In re Pilavis), 244 B.R. 173, 175-76 (1st Cir. BAP 2000).

The records which are required to determine a debtor's financial condition differ from case to case, with a sophisticated business debtor being held to a higher standard than an unsophisticated, uneducated debtor. Golob, 252 B.R. at 76. See also In re Wynn, 261 B.R. at 300 (stating that the following factors were relevant in a § 727(a)(3) proceeding: "debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist"). "If the nature and extent of the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, the debtor must show that because of unusual circumstances there was no duty to keep them." 6 COLLIER ON BANKRUPTCY ¶ 727.03[3][b] (15th ed. rev. 2008). There is no evidence of the Debtor's education, his sophistication, his business experience, his personal financial structure, the nature and extent of his business transactions, or what records others in like circumstances would ordinarily maintain.

16

In addressing whether the documents produced by the Debtor in response to Movant's discovery requests are adequate to ascertain the financial condition of the Debtor, it should first be noted that neither the Movant nor the Debtor supplied the court with any of the documents that the Debtor originally produced. The Movant did file with the court copies of the Debtor's supplemental production of documents. However, only upon a review of all the documents produced by the Debtor could the court determine, as a matter of law, that Debtor failed to keep or maintain documents from which his financial condition or business transactions can be ascertained. Because the court cannot rule on whether the documents produced by the Debtor are sufficient to ascertain his financial condition, the court must determine whether the documents not produced by Debtor are necessary, as a matter of law, to ascertain the Debtor's financial condition.

The Movant established that the Debtor failed to keep or preserve any recorded information relating to the use of Debtor's credit cards. The court cannot say that recorded information relating to the use of Debtor's credit cards is necessary, as a matter of law, to ascertain the financial condition of the Debtor. Schedule F of Debtor's bankruptcy schedules indicates that, at the time of the filing of his bankruptcy case, Debtor owed $12,312.00 on one credit card account owned by Bank of America, out of a total of $165,736.00 in unsecured debt. Only upon hearing testimony as to how this debt relates to the Debtor's financial condition or business transactions can the court determine if his failure to maintain these records prevents the ascertainment of his financial condition or business transactions.

Movant also established that the Debtor failed to keep or preserve any recorded information relating to Debtor's ownership interest in Drain Forest Products. A review of the complaint filed by the Movant in this case reveals various specific allegations regarding the Debtor's purchase of

17

this stock.  Paragraph 9 of the complaint states "in the summer of 2004, Moore agreed to pay $250,000 for 34% of the stock of [Drain Forest Products].  Moore used his father's connections as a director, and [Bank of Tuscaloosa] agreed to make a loan of $150,000 at a below market rate of prime minus 1/4% for Moore to use as a part of the purchase price."  Paragraph 23 of the complaint states "in February of 2005, [Bank of Tuscaloosa] loaned Moore an additional $200,000 to purchase more stock of [Drain Forest Products].  This loan was made at the below market rate of prime less 1/2%.  FNB understood that these funds were to be used by [Drain Forest Products] as working capital."  In order to make this allegation, Movant must have obtained some documentation evidencing these loans and must have documentation evidencing that these loans were for the purchase and expansion of Drain Forest Products.  Therefore, the court cannot say as a matter of law that the failure of the Debtor to keep or preserve copies of records relating to the purchase of his ownership interest in Drain Forest Products, resulted in the inability of the Movant to determine the Debtor's financial condition.

While a trial on the merits may show that Debtor failed to produce records from which his financial condition can be ascertained, this court cannot rule that the discovery responses of the Debtor establish that, as a matter of law, Debtor has failed to keep or preserve such records. Therefore, Plaintiff's request for summary judgment as to the cause of action brought pursuant to § 727(a)(3) is due to be denied.

The Movant also seeks summary judgment as to the cause of action brought pursuant to § 727(a)(5).  To prevail on its Motion for Partial Summary Judgment as to the § 727(a)(5) cause of action, the Movant must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law as to all the requirements of § 727(a)(5).  Therefore, Movant must

18

show that: (1) Debtor experienced a loss or deficiency of assets; and (2) Debtor cannot provide a satisfactory explanation for such loss.  11 U.S.C. § 727(a)(5).

In both its brief and at the hearing on Movant's motion, Movant relied on the differences in the assets listed in the Personal Financial Statement dated January 10, 2005, and the assets listed in the Debtor's bankruptcy schedules dated June 28, 2007, to establish that the Debtor experienced a loss or deficiency of assets.  The Movant concentrates on the following assets: (1) $1,000,000.00 in real estate that is listed on Debtor's Personal Financial Statement, but not in his bankruptcy schedules; (2) $150,000.00 listed on Debtor's Personal Financial Statement, but not in his bankruptcy schedules; (3) $50,000.00 in U.S. Government Securities that is listed on Debtor's Personal Financial Statement, but not in his bankruptcy schedules; (4) $15,000.00 in other assets readily convertible to cash listed on Debtor's Personal Financial Statement, but not in his bankruptcy schedules; (5) $20,400.00 in rental income listed on Debtor's Personal Financial Statement, but not in his bankruptcy schedules; (6) $5,000.00 in cash listed on Debtor's Personal Financial Statement, but not in his bankruptcy schedules; and (7) an unvalued interest in the Thomas W. Moore Irrevocable Trust.

In regards to the $1,000,000.00 in real property that the Debtor listed in the Personal Financial Statement,  Debtor's Answer to Interrogatories indicates that the real property was actually owned by Thomas W. Moore and Stella H. Moore.  Without any evidence that the Debtor owned this real estate at some time, this court cannot find that Movant has shown that the Debtor experienced a loss or deficiency in assets.  The Debtor cannot be denied a discharge for the loss of assets that he does not own.  State Bank of India v. Chachra (In re Chachra), 138 B.R. 397, 403 (Bankr. S.D.N.Y. 1992); Notinger v. Liimatainen (In re Liimatainen), No. 01-01218, 2002 WL 31317182, *6 (Bankr.

19

D.N.H. Oct. 10, 2002). Therefore, the Movant has not shown that the difference in the value of real estate listed on the Personal Financial Statement and in Debtor's bankruptcy schedules constitutes the loss of an asset of the Debtor.

In regards to the $150,000.00 listed on the Personal Financial Statement but not in the bankruptcy schedules, it is unclear whether this value relates to securities of the Debtor or to personal property of the Debtor. The Personal Financial Statement shows a value of $125,000.00 listed for personal property which is crossed out, with $150,000.00 listed in the line above it which refers to "other securities-not readily marketable." In Debtor's Answer to Interrogatories, Debtor indicated that the $150,000.00 constituted everything of value that he owned at the time of the Personal Financial Statement. Because this court must view the facts in the light most favorable to the Debtor, the court will treat this as an answer to "Other Securities-Not Readily Marketable". The complaint alleges that approximately six months prior to this financial statement, the Debtor paid $250,000.00 for a 34% interest in Drain Forest Products, which would be other securities not readily marketable. The Debtor's Statement of Financial Affairs indicates that the Debtor no longer owned an interest in Drain Forest Products at the time the Debtor filed his petition because Drain Forest Products was closed. Securities in a closed company would have little, if any, value. In addition, if the $150,000.00 listed on the Personal Financial Statement represents securities, then the Debtor would have no control over the value of the securities, as the Debtor would have no control over the day-to-day managing of the business in which he owned securities. Without any evidence that an act of the Debtor led to the loss of value of the security, this court is not willing to find that such loss would constitute the loss of an asset of the Debtor. Furthermore, even if such loss did constitute the loss of an asset of the Debtor, the Debtor provided an explanation of such loss. The Debtor's

Case 07-70044-CMS    Doc 36    Filed 01/30/09    Entered 01/30/09 11:13:11    Desc Main
Document    Page 20 of 24

Answer to Interrogatories suggests that the majority shareholder in Drain Forest Products was admitted to a drug rehabilitation facility in Atlanta, Georgia, and that Drain Forest Products ceased operations at some point thereafter. Therefore, the Movant has not shown that the failure of the Debtor to list nonmarketable securities worth $150,000.00 on his bankruptcy schedules constitutes proof that the Debtor has suffered an unexplained loss of an assets.

In regards to the Debtor's interest in the Thomas W. Moore Irrevocable Trust, there is no evidence before this court that the Debtor suffered a loss of his beneficiary interest in the Trust. While it is true that the Debtor did not list his interest in the Trust on his bankruptcy petition, the Debtor also did not list the Trust on the Personal Financial Statement. In both the Debtor's Answer to Movant's Request for Production and the Debtor's supplemental discovery, the Debtor indicated that he produced records relating to the Trust. One of these documents is a letter dated August 26, 2008, which indicates that the Trust is actually a Life Insurance Trust that is funded by an insurance policy with a current market value of $1.00. Neither Debtor, nor the other beneficiaries have ever made a request for the funds in the trust. Having reviewed this letter, the court cannot say as a matter of law that there has been any unexplained loss of an asset as it relates to the Trust.

In regards to the $50,000.00 in U.S. Government Securities that is listed on the Personal Financial Statement, but not in the bankruptcy schedules, the Debtor's Answer to Interrogatories establish that the these securities are actually securities in Security Bank. These would not be U.S. Government Securities, but would be other marketable securities for which nothing is listed on the Personal Financial Statement. In addition, the Movant's Interrogatories asked the Debtor to identify "the stocks identified on line 3 [U.S. Gov. Securities] at a value of $50,000.00." The Debtor identified it as "stock at Security Bank that was sold at a loss of $30,000 and deposited in a Merrill

21

Lynch Account." Merrill Lynch account records were produced. Debtor explained the loss of the asset listed on the Personal Financial Statement. Therefore, the Movant failed to show that Debtor suffered an unexplained loss of an asset.

In regards to the $15,000.00 in other assets readily convertible to cash listed on the Personal Financial Statement, but not in the bankruptcy schedules, this court believes that this $15,000.00 could be anything. The Debtor has certainly listed assets on his schedules that are worth $15,000.00. In fact, some assets listed on Debtor's bankruptcy schedules are worth more than $15,000.00. In the absence of evidence that the $15,000.00 is the value of a specific asset, or a specific group of assets, that is not listed on Debtor's bankruptcy petition this court finds that the Movant has failed meet its burden of showing that the Debtor experienced a loss of an asset as it relates to the $15,000.00.

In regards to the $20,400.00 in rental income listed on the Personal Financial Statement, but not in his bankruptcy schedules, this court is not prepared to rule that the loss of rental income in this case constitutes the loss of an asset. This is true because there is no evidence as to the source of that rental income. It is possible that the rental income was received as a result of interest in one of several businesses. Debtor's Schedule B and Statement of Financial Affairs show the Debtor was a 50% owner of Hood Bottom, LLC, which "operat[ed] and maintain[ed] [a] farming/hunting property." The Debtor valued Hood Bottom on Schedule B, and it is entirely possible that the valuation listed on Schedule B takes into account any rental income the Debtor receives from Hood Bottom. Because this court must view the facts in the light most favorable to the Debtor, this court cannot conclude that there was any loss of rental income. It is also possible that the rental income came from the real estate that Debtor's father owns. Because this court must view all facts in the light most favorable to the Debtor, the court cannot conclude that the Movant established that the

22

rental income was an actual asset of the Debtor. Without knowing the source of the rental income, the court cannot determine whether the rental income constitutes an asset of the Debtor or whether the Debtor suffered a loss in the amount of rental income he received. Therefore, the Movant failed to meet its burden of proof as to an unexplained loss of the Debtor's rental income.

In regards to the $5,000.00 in cash listed on the Statement, but not in his bankruptcy schedules, this court will not find that the loss of such a limited amount of cash constitutes sufficient grounds to find that the Debtor should be denied a general discharge for an unexplained loss of assets. In addition, Debtor's schedules filed in June of 2007 reflect approximately $1,100.00 in cash in checking accounts and also reflect that the Debtor paid $5,000.00 to his attorney to file the bankruptcy petition shortly before the filing. Therefore, the Debtor has provided an explanation for any loss of cash that he might have suffered since the filing of the Personal Financial Statement. Movant failed to meet its burden of proof as to an unexplained loss of Debtor's cash.

While a trial on the merits may show that Debtor experienced an unjustified, unexplained loss of assets, the Movant failed to show that there is no genuine issue of material fact as to this issue. Therefore, Defendant's request for summary judgment as to the cause of action brought pursuant to § 727(a)(5) is due to be denied.

## CONCLUSION

The court finds that the Movant failed to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law as to the cause of action brought pursuant to section 727(a)(3). The court also finds that the Movant failed to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law as to the cause of action brought pursuant to section 727(a)(5). Therefore, the court **DENIES** the Movant's Motion for Partial

23

Summary Judgment.

An Order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered

separately.

**DONE and ORDERED** this January 30, 2009.


/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge